UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION

VICKI TEETOR,                )
                                )
         Plaintiff,       )     Case: 4:15-cv-01002-HEA
                                )
v.                           )
                                )
ROCK-TENN SERVICES INC.,    )
                                )
         Defendant.     )

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff Vicki Teetor is a former employee of Defendant Rock-Tenn Services Inc. ("WestRock").[1]  As a Market Analyst in WestRock's Waste Services division in St. Louis, Missouri, Plaintiff performed critical work that drove the division's profits by negotiating and managing the procurement of waste removal services for WestRock's customers.  In 2014, Plaintiff's work performance suffered, she failed to improve despite being given a performance improvement plan, and WestRock decided to terminate her employment in January 2015.  *After* the discharge decision was made but before it could be executed, Plaintiff requested FMLA leave due to breathing and nerve issues.  Plaintiff's doctors determined that she was totally disabled and she began receiving disability benefits.  WestRock subsequently effectuated the termination of Plaintiff's employment.  Over two years later, Plaintiff remains completely unable to work and she continues to receive disability benefits.

Plaintiff now claims that her discharge somehow violated the Family and Medical Leave Act ("FMLA"), the Missouri Human Rights Act ("MHRA"), and the Americans with Disabilities Act ("ADA").  Plaintiff is mistaken.  Plaintiff cannot maintain any claim under the FMLA, the

---

[1] After the filing of this action, Defendant Rock-Tenn Services Inc. changed its name to WestRock Services, Inc.

MHRA, or the ADA, because she and her doctors agree that she is totally disabled and she is not able to perform her job as a Market Analyst even with a reasonable accommodation.  Further, the decision to discharge Plaintiff occurred *before* she requested leave, and it had nothing to do with that request or her disability.

Plaintiff also seeks overtime compensation under the Fair Labor Standards Act ("FLSA"), and the Missouri Minimum Wage Law ("MMWL"), claiming that she should not have been classified as exempt.  As a matter of law, Plaintiff was employed in a bona fide administrative capacity, she was exempt from the overtime requirements of the FLSA and MMWL, and she is not entitled to overtime pay under either statute.  Thus, WestRock is entitled to summary judgment on all of Plaintiff's claims, which should be dismissed with prejudice.

## BRIEF STATEMENT OF FACTS

WestRock is a leading global packaging company with a Waste Services division that brokers and manages waste removal, transport, disposal, and/or recycling for national and regional customers.  SUMF ¶¶ 1-3.  Plaintiff worked for WestRock's Waste Services Division as a Market Analyst from 2005 until March 2015, servicing the southeastern United States.  SUMF ¶ 25.  As a Market Analyst, Plaintiff was paid a salary and classified as exempt from overtime. SUMF ¶¶ 26-27.

Plaintiff was primarily responsible for negotiating and managing the procurement of solid waste and recycling removal services for WestRock's customers.  SUMF ¶¶ 34-89.  Plaintiff used her discretion and independent judgment to drive WestRock's profitability by negotiating and holding in place the best waste and recycle rates possible for current and potential customers. SUMF ¶¶ 34-89.  Plaintiff also used her discretion and independent judgment to resolve elevated service or pricing issues to contain costs and keep WestRock's customers happy.  SUMF ¶ 85.

In September 2013, Plaintiff took eight weeks of FMLA leave due to some breathing issues.  SUMF ¶¶ 110-11.  Plaintiff's supervisor, Sean Vigna, encouraged her to request the leave, and he provided her with a positive performance review and raise while Plaintiff was on leave. SUMF ¶¶ 32-33, 110.  After Plaintiff returned from her 2013 FMLA leave, she did not request additional FMLA leave until February 2015.  SUMF ¶¶ 237.  During the interim, Plaintiff had dozens of full and partial absences for a variety of reasons, only some of which were related to her breathing issues.  SUMF ¶¶ 122-88.  Mr. Vigna never denied her leave for any reason.  SUMF ¶ 196.

In 2014, Plaintiff's performance struggled due to the inaccuracy of Plaintiff's work and her inability to communicate effectively.  SUMF ¶¶ 197-206.  Mr. Vigna documented her struggles, gave Plaintiff a negative performance review, placed her on a performance improvement plan, documented her failure to adequately improve, and ultimately decided to discharge Plaintiff.  SUMF ¶¶ 197-227.  Mr. Vigna's discharge decision was approved by his managers and HR, and they decided to wait for Plaintiff – who was out of the office – to return to work before executing the discharge.  SUMF ¶¶ 229-35.

Two days *after* Mr. Vigna made the decision to discharge her but before the discharge occurred, Plaintiff contacted WestRock's third-party leave administrator to request FMLA leave and short-term disability leave beginning February 2, 2015.  SUMF ¶ 237.  Because her doctors determined she was totally disabled and unable to work, Plaintiff began receiving disability benefits.  SUMF ¶¶ 253-57.  While she was on leave, WestRock notified Plaintiff of the decision to discharge her employment based on her poor performance that had been made before her leave request.  SUMF ¶ 248.

Since going out on leave in February 2015, Plaintiff has been completely unable to work, she continues to receive disability benefits, she has applied for social security disability benefits, and no doctor has released her to work in any capacity.  SUMF ¶¶ 249-72.

Plaintiff sued WestRock, bringing seven claims.  In Counts I and II, Plaintiff alleges that her discharge violated her rights under the FMLA.  In Counts III and IV, Plaintiff alleges that WestRock's failure to pay her overtime violated the FLSA and/or the MMWL.  Finally, in Counts V, VI, and VII, Plaintiff alleges that her discharge and WestRock's alleged failure to accommodate her disability violated her rights under the MHRA and/or the ADA.

<u>**ARGUMENT**</u>

**I.   PLAINTIFF WAS EXEMPT FROM THE FLSA'S AND THE MMWL'S OVERTIME REQUIREMENTS BECAUSE SHE WAS EMPLOYED IN A BONA FIDE ADMINISTRATIVE CAPACITY.**

Whether Plaintiff's Market Analyst position was exempt from overtime is not a close case.  Plaintiff was paid a significant salary that far exceeded statutory minimums.  The administrative work she performed on behalf of WestRock's customers drove the profitability for an entire division of WestRock, and Plaintiff admits that she regularly used discretion and independent judgment regarding significant matters.

Any employee who is employed in "a bona fide . . . administrative . . . capacity" is exempt from the overtime requirements of the FLSA and therefore not entitled to additional compensation for hours worked in excess of forty hours per week.  29 U.S.C. § 213(a)(1); Mo. Rev. Stat. § 290.505(3) (incorporating the exemptions from the FLSA).  Here, the undisputed evidence demonstrates that Plaintiff is exempt from the FLSA's overtime pay requirements

because she meets the U.S. Department of Labor's ("DOL") test for the administrative

exemption.[2]

The DOL's regulations set out the three required prongs to meet the administrative

exemption. It applies to an employee:

> (1) Compensated on a salary or fee basis at a rate of not less than
> $455 per week . . . ;
>
> (2) Whose primary duty is the performance of office or non-
> manual work directly related to the management or general
> business operations of the employer or the employer's customers;
> and
>
> (3) Whose primary duty includes the exercise of discretion and
> independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).  As a Market Analyst, Plaintiff met all of these requirements.

## A.    Plaintiff Was Paid On A Salary Basis At A Rate That Far Exceeded $455/Week.

Plaintiff was paid a bi-monthly salary that ranged from $1,923.04 ($46,152.96 annually)

to $2,010.51 ($48,252.24 annually) during the relevant time period.  SUMF ¶¶ 28, 31, 33, 213.

Plaintiff's salary, which was not reduced based on the number of hours she worked or the quality

of her performance, meets this prong.  SUMF ¶ 27; 29 C.F.R. § 541.602.

---

[2] As noted, the FLSA's standards apply to Plaintiff's claim under the MMWL.  Mo. Rev Stat. §§
290.505(3)-(4) (incorporating the FLSA's exemptions into the MMWL and directing
interpretation in accordance with the FLSA); *Hanis v. Metro. Life Ins. Co.*, No. 14-1107-CV-W-
FJG, 2016 WL 5660344, at *5 (W.D. Mo. Sept. 29, 2016) (The Missouri Wage Law incorporates
the FLSA's exemptions from overtime liability, so the Court's ruling applies equally to plaintiff's
claims under both statutes." (citations omitted)).

**B.**     **Plaintiff's Primary Duty Of Negotiating And Managing The Procurement Of Waste And Recycling Services For WestRock's Customers Constitutes The Performance Of Non-Manual Work Directly Related To The General Business Operations Of WestRock's Customers.**

It is undisputed that Plaintiffs' primary duty was the non-manual work of negotiating and procuring waste and recycling services for WestRock's customers, which relates to the general business of those customers.  SUMF ¶¶ 34-89.

This second prong distinguishes exempt "administrative" work from productive work by exempting "employees whose work involves servicing the business itself." 69 Fed. Reg. at 22141; *see also* 29 C.F.R. § 5412.201(a) ("[A]n employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.").

Plaintiff's primary duty of negotiating and managing the procurement of solid waste and recycling service providers for WestRock's customers is exempt administrative work.  Plaintiff did not perform any work directly related to the actual business of WestRock's customers (which include restaurants, retail stores, hotels, and a variety of other establishments).  SUMF ¶ 289.  Instead, she helped those customers to save money in the procurement of necessary waste and recycling removal services and to effectively manage those services.  SUMF ¶¶ 34-89.  "Work directly related to management or general business operations" includes "work in functional areas such as . . . procurement [and] purchasing."  29 C.F.R. § 541.201(b); *see Grage v. N. States Power Co.-Minnesota*, 813 F.3d 1051, 1055 (8th Cir. 2015) ("Administrative work could also include . . . negotiating." (internal quotation marks omitted)).

Plaintiff's non-manual work directly related to the business operations of WestRock and its customers satisfies the second prong of the administrative exemption.

**C.** **Plaintiffs' Primary Duty Of Negotiating And Managing The Procurement Of Waste And Recycling Services For WestRock's Customers Included The Exercise Of Discretion And Independent Judgment With Respect To Matters Of Significance.**

Plaintiff's work as a Market Analyst included the regular exercise of discretion and independent judgment with respect to matters of significance, as seen in Plaintiff's description of her position as a Market Analyst in her resume, the Market Analyst position description (which Plaintiff admits is accurate), and Plaintiff's deposition testimony.

**1.** **Plaintiff regularly exercised discretion and independent judgment.**

The DOL identifies various factors to consider when determining whether someone exercises discretion and independent judgment, including the following:

- "whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices;"

- "whether the employee carries out major assignments in conducting the operations of the business;"

- "whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;"

- "whether the employee has authority to commit the employer in matters that have significant financial impact;"

- "whether the employee has authority to negotiate and bind the company on significant matters;" and

- "whether the employee investigates and resolves matters of significance on behalf of management."

29 C.F.R. § 541.202(b).

Plaintiff's work as a Market Analyst included each of these activities.  Plaintiff's resume describes her work as a Market Analyst for WestRock in a manner that nearly quotes the DOL factors:

- "*Analyze operations determining course of action which are more effective*.

- "*[C]reate new processes* across internal departments."

- "*Create and analyze all vender bed [sic] /negotiations.*"

- "*Lead special projects* assigned by executive staff and management."

- "Assist with vendors on invoice discrepancies, books of business, and *escalated service questions*."

- "*[V]endor management*."

- "Partnered with account coordinators *to manage and understand business needs for clients*."

- "*Address and resolve elevated client issues*."

- "Evaluating and interpreting data and financial reports formulating reports and *making recommendations based upon the market area*."

- "Understanding the objectives and demands as well as the concerns of the clients *to determine where potential problems and opportunity lie*."

- "Collect and analyze data to *evaluate existing and potential markets to identify and monitor market conditions to make changes*."

SUMF ¶ 81 (emphasis added).

The Market Analyst job description, which Plaintiff admits is accurate, also highlights

several ways in which Plaintiff used her discretion and independent judgment:

- "*Drive profitability by negotiating and holding in place the best waste and recycle rates* for RockTenn Recycling National Account's existing and potential new customers"

- "*Continuously improve internal processes* through interaction and communication with all areas and levels of the organization"

- "*Develop solutions and make decisions necessary to resolve issues* that are in the best interest of RockTenn and its customers"

SUMF ¶ 79 (emphasis added).

The description of the Market Analyst position in Plaintiff's resume and job description

are borne out by the work Plaintiff admits she performed.  Using her discretion and independent

judgment, Plaintiff awarded business to haulers, committing WestRock's customers to a service provider for at least one year at a time.  SUMF ¶ 83.  When awarding business, Plaintiff considered multiple options and chose the best one, using factors like the rates offered, the services each hauler is capable of performing, and whether any hauler is able to offer lower rates with a bulk contract.  SUMF ¶ 84; *see* 29 C.F.R. § 541.202(a) ("In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.").

Using her discretion and independent judgment, Plaintiff resolved elevated service and pricing issues with haulers and – when necessary – Plaintiff used her independent judgment to determine when and how to replace the hauler.  SUMF ¶ 85.  When replacing a hauler, Plaintiff again identified and then chose from several options, picking the best solution for the customer. SUMF ¶ 86.

It is immaterial that some of Plaintiff's decisions and recommendations may have been reviewed by her managers.  *See* 29 C.F.R. § 202(c) ("The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.").  At most, Plaintiff's recommendations for action were subject to a cursory review and they were almost always followed.  SUMF ¶¶ 44-46.  For example, Plaintiff estimates that her proposals for changes to haulers were accepted by the customer about 95 percent of the time.  SUMF ¶ 87. Plaintiff even noted that there were occasions where she disagreed with her supervisors' plan for awarding a contract, she explained why their plan would not work, and, most of the time,

Plaintiff successfully convinced her bosses to change their mind and to implement her plan. SUMF ¶ 88.

## 2.      Plaintiff used her discretion and independent judgment regarding matters of significance.

Simply put, every decision that Plaintiff made when performing her primary duty involved a matter of significance, because the profitability of WestRock's Waste Services division is directly tied to how well Plaintiff was able to use her discretion and independent judgment while negotiating waste hauling services and securing savings for WestRock's customers.  SUMF ¶¶ 9, 49.  Plaintiff admits that her job as a Market Analyst was critical to whether the company made money or not.  SUMF 89.  Also, Plaintiff's ability to effectively resolve elevated issues with service providers helped to contain costs and retain customers. SUMF ¶¶ 67-70.  These are matters of significance.  *See* 29 C.F.R. § 541.202(a) ("The term 'matters of significance' refers to the level of importance or consequence of the work performed.").[3]

The undisputed facts show that Plaintiff's primary duty involved the non-manual work of negotiating and managing the procurement of waste removal services for WestRock's customers, it included the exercise of independent judgment with respect to matters of significance, Plaintiff received well more than the statutorily required salary, and she was therefore properly classified as exempt from overtime under both the FLSA and the MMWL.  *Grage v. N. States Power Co.-Minnesota*, 813 F.3d 1051, 1054 (8th Cir. 2015) ("[W]hether [employees'] particular activities

---

[3] It is immaterial that there were other Market Analysts doing similar work.  29 C.F.R. § 541.202(d) ("The fact that many employees perform identical work or work of the same relative importance does not mean that the work of each such employee does not involve the exercise of discretion and independent judgment with respect to matters of significance.").

excluded them from the overtime benefits of the FLSA is a question of law." (internal quotation marks omitted)).  Thus, Plaintiff's overtime claims should be dismissed with prejudice.

## II.      THE DECISION TO DISCHARGE PLAINTIFF FOR POOR PERFORMANCE – WHICH OCCURRED BEFORE SHE REQUESTED FMLA LEAVE – DID NOT VIOLATE HER RIGHTS UNDER THE FMLA.

Plaintiff claims her discharge violated her rights under the FMLA either (1) because it interfered with her entitlement to leave or (2) because it constituted discrimination against her based on her request for leave.  Like her overtime claims, Plaintiff's FMLA claims are meritless and should be dismissed with prejudice.

### A.      Plaintiff's FMLA Entitlement Claim Fails As A Matter Of Law Both Because Plaintiff's Discharge During Her Leave Was Not Related To Her FMLA Claim And Because She Was Not Capable Of Returning To Work At The End Of Her Leave Entitlement.[4]

Plaintiff claims that WestRock violated her FMLA rights by discharging her while she was on FMLA leave.  Plaintiff's entitlement claim fails for two independent reasons, either of which mandates summary judgment for WestRock: (1) Plaintiff's discharge was entirely unrelated to her leave, and (2) Plaintiff was not capable of returning to work when her leave entitlement would have ended.

#### 1.      The decision to discharge Plaintiff was not related to her FMLA leave.

The undisputed material facts demonstrate that WestRock decided to discharge Plaintiff before she requested FMLA leave based on performance-related reasons that were entirely unrelated to her leave.  SUMF ¶ 237.  Plaintiff repeatedly demonstrated poor performance over the course of months, her supervisor Mr. Vigna gave her a poor performance review, he placed Plaintiff on a PIP, and he then decided to discharge Plaintiff after she made a series of additional,

---

[4]Plaintiff labeled Count I in her Complaint as "FMLA Interference."  The Eighth Circuit has stated that this claim is more properly labeled as an FMLA "entitlement" claim.  *See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1006 (8th Cir. 2012).

significant mistakes.  SUMF ¶¶ 197-226.  That Plaintiff initiated FMLA leave after Mr. Vigna's decision, but before he could meet with her, is not helpful to Plaintiff:  "[T]he mere fact of discharge during FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights."  *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050-51 (8th Cir. 2006).  Indeed, the undisputed fact that the discharge decision *predates* the request for FMLA leave refutes any causal connection.  "[W]here an employer's reason for dismissal is insufficiently related to FMLA leave, the reason will not support the employee's recovery."  *Id.*

Stated more simply, Plaintiff's subsequent request for leave did not immunize her from the discharge decision: "No employee taking FMLA leave is entitled to any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."  *Dalton v. ManorCare of W. Des Moines IA, LLC*, 782 F.3d 955, 962 (8th Cir. 2015) (internal citations and alterations omitted).  WestRock planned to discharge Plaintiff regardless of her subsequent need for leave, and she did not gain any protection from that discharge by requesting and taking leave.[5]

Ultimately, Plaintiff's FMLA leave had no effect on the discharge decision, and Plaintiff's FMLA entitlement claim fails as a matter of law.  *See Dalton*, 782 F.3d at 962 (affirming summary judgment where an employee on leave was discharged for performance reasons that pre-dated her request for leave).

---

[5] In reality, Plaintiff's intervening FMLA leave only served to temporarily extend her employment, which would have otherwise ended sooner.  SUMF ¶ 244.

2.      **Plaintiff's FMLA entitlement claim also fails because Plaintiff was not capable of returning to work at the end of her FMLA entitlement.**

Plaintiff cannot claim interference with her FMLA rights based on the failure to reinstate her at the end of her employment because she was unable to return to work after her twelve-week leave entitlement would have ended.  "If an employee exhausts FMLA leave and is 'unable to perform an essential function of the position because of a physical or mental condition,' the employer may terminate her employment."  *Hasenwinkel v. Mosaic*, 809 F.3d 427, 432 (8th Cir. 2015) (quoting 29 C.F.R. § 825.216(c)).

Plaintiff's FMLA leave began on February 2, 2015, and she would have exhausted her twelve weeks of FMLA leave on April 27, 2015.  SUMF ¶ 253.  It is undisputed that Plaintiff could not have returned to work on April 27, 2015.  SUMF ¶¶ 249-72.  When her leave began, Plaintiff's doctors determined that Plaintiff was totally incapable of working, estimated that she would be unable to work for at least one year, and noted that no accommodations were possible to permit her to work.  SUMF ¶ 251.  During her deposition, Plaintiff agreed that assessment of her health was and remains accurate.  SUMF ¶ 252.  Not surprisingly, long after her FMLA entitlement would have ended in April 2015, Plaintiff continues to claim and receive LTD benefits, which require her to show that she was totally disabled and incapable of work.  SUMF ¶¶ 255-57.  To this day, Plaintiff remains unable to work – more than two years after her FMLA leave would have ended.  SUMF ¶¶ 257, 260.

Thus, Plaintiff was not deprived of any right under the FMLA because she would not have been entitled to reinstatement at the end of her FMLA leave.  *See Hasenwinkel*, 809 F.3d at 432 (requiring an employee to show "that the company denied her benefits to which she was entitled to under the FMLA" in order to prevail under an FMLA interference claim).

**B.**     **Plaintiff's FMLA Discrimination Claim Fails Because The Decision To Discharge Plaintiff Occurred *Before* She Requested FMLA Leave.[6]**

Plaintiff's claim that WestRock discharged her because she requested leave under the FMLA is defeated by a simple and undisputed fact: the decision to discharge her occurred before she requested leave.  SUMF ¶ 237.  Mr. Vigna decided to discharge Plaintiff on January 27, 2015, two days *before* anyone at WestRock had any notice of Plaintiff's request for leave.  *Id.* The familiar *McDonnell Douglas* burden-shifting framework applies to FMLA discrimination claims.  *Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 924 (8th Cir. 2014).  "To establish a prima facie case, the plaintiff must 'show that she exercised rights afforded by the [FMLA], that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action.'"  *Id.* (quoting *Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008)).  Plaintiff cannot make a prima facie showing because she cannot establish a causal connection between her discharge and her exercise of rights for the obvious reason that the decision to discharge preceded her exercise of rights.  Thus, her FMLA discrimination claim fails as a matter of law and should be dismissed with prejudice.[7]

---

[6] Plaintiff labeled Count II in her Complaint as "FMLA Retaliation."  The Eighth Circuit has stated that her claim – alleging that WestRock took an adverse action in response to her exercise of protected rights – is more properly labeled as FMLA "discrimination."  *See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1006 (8th Cir. 2012).

[7] Even if Plaintiff were somehow able to make out a prima facie case of FMLA discrimination – which she cannot – her claim would still fail at the later *McDonnell-Douglas* stages.  WestRock had a legitimate, non-discriminatory reason for discharging Plaintiff (her continuing poor performance), and there is no evidence that this reason was a pretext for FMLA discrimination. If anything, the facts show the opposite.  It is undisputed that Plaintiff was never denied a request for time off for any reason, and WestRock had provided Plaintiff FMLA previously without any adverse effect.  SUMF ¶¶ 112-13, 196.

## III.   WESTROCK'S DECISION TO DISCHARGE PLAINTIFF FOR HER POOR PERFORMANCE ALSO DID NOT VIOLATE HER RIGHTS UNDER THE ADA OR THE MHRA.

Finally, Plaintiff claims that WestRock's decision to discharge her employment in January 2015 constituted disability discrimination either because WestRock failed to accommodate her disability by failing to permit her to work from home or because Plaintiff's disability somehow contributed to WestRock's decision to discharge her.  Like her other claims, Plaintiff's disability claims fail as a matter of law because the undisputed facts show that Plaintiff's disability could not be reasonably accommodated and it did not contribute to her discharge for poor performance.

## A.   Plaintiff's ADA And MHRA Claims Fail Because She Is Not Able To Perform The Essential Functions Of Her Position Even With A Reasonable Accommodation.

In order for Plaintiff to sustain any of her claims under the MHRA or the ADA, she must be able to demonstrate that she is capable of performing the essential functions of her job with or without a reasonable accommodation:  "Under the MHRA . . . a plaintiff must show that with or without accommodation [s]he can perform the essential functions of h[er] job in order to establish that [s]he is disabled within the meaning of the statute."  *Noel v. AT & T Corp.*, No. 4:12-CV-1673 CAS, 2014 WL 117606, at *13 (E.D. Mo. Jan. 13, 2014), *aff'd*, 774 F.3d 920 (8th Cir. 2014).  Similarly, Plaintiff's failure-to-accommodate claim under the ADA requires her to show that a reasonable accommodation was available.  *See Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 864 (8th Cir. 2006).  Plaintiff's MHRA and ADA claims fail because Plaintiff is not capable of performing the essential functions of her job with or without a reasonable accommodation.[8]

---

[8] In Count VI, Plaintiff claims that WestRock failed to accommodate her disability in violation of the MHRA.  Dkt. No. 29, at ¶¶ 81-89. The MHRA, unlike the ADA, does not have a separate claim based on an employer's failure to reasonably accommodate.  *Devor v. Blue Cross & Blue*

As discussed above, Plaintiff has been completely incapable of any meaningful work since she went out on leave in February 2015.  SUMF ¶¶ 249-272.  Numerous doctors have concluded that Plaintiff not capable of working.  *Id.*  One doctor even went so far as to indicate that Plaintiff could *never* do any work-related actions, including sitting, standing, walking, or grasping with her hand.  SUMF ¶ 262.  Plaintiff has not worked in any capacity since going out on leave in February 2015.  SUMF ¶ 260.  Plaintiff started received STD benefits when she first went on leave, she now receives LTD benefits, and she has applied for social security disability benefits.  SUMF ¶¶ 253-59.  For each of these benefits, she has represented to an insurance company or the federal government that she is not capable of working at all.  SUMF ¶ 253-59.  Plaintiff agrees with her doctors' assessment of her health and capabilities and she stands by her representations in support of her disability insurance claims.  SUMF ¶¶ 252, 260.  Nevertheless, Plaintiff remarkably has taken the after-the-fact and inconsistent position in this case that she was and is somehow capable of performing her job as a Market Analyst from home.

Plaintiff's desired accommodation of working from home is not reasonable, it would cause WestRock undue hardship, and even, if it were available, there is no evidence that permitting Plaintiff to work from home would be an effective accommodation for her disability.[9]

---

*Shield of Kansas City*, 943 S.W.2d 662, 666 (Mo. Ct. App. 1997) ("[U]nlike federal law, the MHRA makes the question of whether the job can be performed with reasonable accommodation a part of the test for determining whether an employee is handicapped in the first instance."). Thus, Count VI should be dismissed with prejudice.

[9] Plaintiff may try to claim that WestRock failed to accommodate her leave by failing to provide her with extended leaves of absence.  Indefinite leave, however, is not a reasonable accommodation, particularly in this case where Plaintiff has been on leave for more than two years and remains unable to return to work.  *See Ousley v. New Beginnings C-Star, Inc.*, No. 4:09CV1957 HEA, 2011 WL 4899950, at *5 (E.D. Mo. Oct. 14, 2011) (holding that indefinite leave is not a reasonable accommodation).

1.     **Working from home is not a reasonable accommodation for Market Analysts.**

Working from home is not a reasonable accommodation because in-person attendance is an essential function of the Market Analyst position.  The Eighth Circuit has held that "regular attendance at work is an essential function of employment." *Brannon v. Luco Mop Co.*, 521 F.3d 843, 849 (8th Cir. 2008); *see Browning v. Liberty Mut. Ins. Co.,* 178 F.3d 1043, 1048 (8th Cir.1999) ("[I]t is axiomatic that in order for [an employee] to show that she could perform the essential functions of her job, she must show that she is at least able to show up for work."). This doctrine is reinforced when the absence from the workplace negatively impacts productivity: "The Sixth Circuit, in agreement with the Seventh and Fourth Circuits, has held that the ADA does not require employers to permit employees to work from home, 'where their productivity inevitably would be greatly reduced.'" *Brown v. Humana Ins. Co.*, 942 F. Supp. 2d 723, 732 (W.D. Ky. 2013) (quoting *Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir. 1997)). "Working from home can be an impediment to the smooth functioning of a business when the job responsibilities of the person working from home are time-sensitive and team-oriented." *Id.*

The undisputed facts show that working from home is not reasonable in this case because in-person work attendance was an essential part of Plaintiff's job as a Market Analyst.  SUMF ¶ 90.  Permitting Plaintiff to work from home would cause WestRock undue hardship.  First, by the time Plaintiff's disability arose, WestRock had already tried and rejected permitting Market Analysts to work from home.  SUMF ¶ 101-04.  For a short time period around 2010, WestRock allowed its Market Analysts to work from home as a convenience because several of the Market Analysts (including Plaintiff) lived far from the office.  SUMF ¶ 101.  During that period, General Manager Paul MacDonald noted that the performance of the Waste Services division suffered because they were not able to efficiently work with the other Market Analysts, they were slower to respond to emergent customer issues, they missed out on the opportunity to

interact directly with individuals from other departments, and they were more difficult to manage.  SUMF ¶ 102.  Ultimately, Mr. MacDonald determined that the Market Analysts needed to work in the same location as the rest of the Waste Services team.  SUMF ¶ 103.  Since then, no Market Analyst has been permitted to regularly work from home.  SUMF ¶ 104; *see Kinnaman v. Ford Motor Co.*, 79 F. Supp. 2d 1096, 1103 (E.D. Mo. 2000) ("The Court defers to [the employer]'s identification of regular and predictable attendance as an 'essential function' of the [plaintiff's] job.").

Second, Plaintiff and the other Market Analysts were regularly reminded that they were expected to be at work.  SUMF ¶ 92.  Plaintiff admitted that in order to do her job properly she needed to be at work and have regular attendance.  SUMF ¶ 91.  Her job was fast-paced with tight turn-arounds and deadlines, which makes it the type of job that is not conducive to being done from home.  SUMF ¶ 76; *see Medley v. Valentine Radford Commc'ns, Inc.*, 173 S.W.3d 315, 322 (Mo. Ct. App. 2005) (holding that working from home was not reasonable for an individual who "was responsible for negotiating and buying media for clients and for various other media distribution matters").

Finally, Plaintiff worked as a member of a team that included her fellow Market Analysts as well as the other employees in the Waste Services Division.  SUMF ¶ 93.  Plaintiff was even reviewed on her ability to work well on a team.  SUMF ¶ 95.  Plaintiff coordinated large projects involving the other Market Analysts, which required in-person meetings.  SUMF ¶ 96.  Plaintiff even described how she and other Market Analysts would meet during the weekend to work on these projects together in person.  SUMF ¶ 98.  Plaintiff admitted during her deposition that her workday regularly included impromptu, work-related discussions with coworkers, addressing things such as problems with haulers or the need for Plaintiff to obtain new rates or new service

for a new customer location.  SUMF ¶ 99.  Plaintiff engaged in regular in-person meetings with members of other departments aimed at improving efficiency, internal communication, and company processes.  SUMF ¶ 100.

**2.      Working from home would not be an effective accommodation for Plaintiff's disability.**

Even if Plaintiff were able to prove that working from home could be a reasonable accommodation, the undisputed facts show that it would not be an effective accommodation for her disability.  As discussed above, Plaintiff's health has precluded her from any gainful employment for over two years.  SUMF ¶¶ 249-72.  Plaintiff offers no credible explanation for how she could perform her job as a Market Analyst, given her doctor's assessment of her abilities (including her inability to walk, stand, sit, or grasp).  SUMF ¶¶ 265-67.  Instead, Plaintiff just offers her subjective "hope" that she would be able to perform the position requirements at home if she tried.  SUMF ¶ 266.  No doctor has ever determined that Plaintiff would be capable of performing the responsibilities of a Market Analyst from home, and her doctors have even counseled her not to.  SUMF ¶¶ 255, 271-72.  The medical evidence in the record shows that she would not.

Further, Plaintiff claimed in her deposition that it is "impossible" to do the Market Analyst position while working a normal schedule from 7 to 4 Monday to Friday.  SUMF ¶ 105.  Then Plaintiff admitted during her deposition that her disability would prevent her from working more than eight hours in a day, even from home.  SUMF ¶ 269.  Therefore, it is undisputed that no effective accommodation exists for Plaintiff's disability (be it working from home or any other after-the-fact accommodation Plaintiff might allege).  As such, her disability discrimination claims must be dismissed.

**B.     Plaintiff's Claim Under The MHRA Also Fails Because Her Disability Did Not Contribute To WestRock's Decision To Discharge Her.**

Even if Plaintiff were "disabled" within the meaning of the MHRA, Plaintiff's claim for disability discrimination under the MHRA still fails because it is undisputed that Plaintiff's disability did not contribute to her discharge. *See Cosby v. Steak N Shake*, 804 F.3d 1242, 1245 (8th Cir. 2015) ("A plaintiff alleging discrimination under the MHRA can avoid summary judgment by showing that his disability was a 'contributing factor'. . . in the adverse employment action."). The existence of a disability and the occurrence of an adverse action, without more, are not sufficient for a successful disability discrimination claim. *Chalfant v. Titan Distrib., Inc.*, 475 F.3d 982, 990-991 (8th Cir. 2007). That is all Plaintiff can demonstrate, and she lacks any evidence to dispute WestRock's legitimate reasons for her discharge.

It is undisputed that Mr. Vigna discharged Plaintiff for failing to improve upon her performance deficiencies during her performance improvement period. SUMF ¶ 225. Her disability was simply not a factor in that decision. Significantly, Plaintiff readily admitted in her deposition that, regardless of her disability or her absences, she would have received the same mistreatment from Mr. Vigna because they had a personality conflict and Plaintiff was not in Mr. Vigna's "inner circle" of preferred employees because she did not do the "cliques." SUMF ¶ 285. Thus, Plaintiff concedes that her disability was not *any* factor in her discharge.

Consistent with Plaintiff's admission, there is no evidence of any animus toward Plaintiff's disability. Plaintiff admits that no one in management ever said anything negative to Plaintiff about her disability. SUMF ¶¶ 280-86. Paul MacDonald, who agreed with and approved the decision to discharge Plaintiff, had previously helped Plaintiff to resolve issues within the workplace that caused her breathing problems. SUMF ¶¶ 114-18. Further, no

similarly situated employee with similar performance problems was treated more favorably than Plaintiff.  SUMF ¶ 288.

The timing of the discharge decision also does not support Plaintiff's discrimination claim.  Mr. Vigna knew about Plaintiff's breathing issues since before her prior FMLA leave in September 2013, more than a year before he decided to discharge her.  SUMF ¶ 109.  Indeed, in November 2013, Mr. Vigna gave Plaintiff (1) a positive review and (2) a raise, all while she was out on disability-related leave.  SUMF ¶ 32-33.  These facts dispositively undermine any suggestion disability animus.  When Mr. Vigna made the decision to discharge Plaintiff in January 2014, he was unaware that Plaintiff's health issues were getting worse or that she was about to go out on an indefinite leave.  SUMF ¶¶ 120. 240.  Plaintiff admits that Mr. Vigna was not aware of the seriousness of her issues and that she did not discuss her disability with him.  SUMF ¶ 120.  Plaintiff herself did not even know at that time that she would be going out on an indefinite leave.  SUMF ¶ 242.

In the face of this overwhelming evidence, Plaintiff offers only her "personal opinion" that her disability-related *absences* contributed to Mr. Vigna's decision to discharge her.  SUMF ¶ 287.  Plaintiff has no evidence to support her opinion, which is directly contradicted by the undisputed facts.  SUMF ¶ 228.  Again, Plaintiff admits that Mr. Vigna never denied any of Plaintiff's requests to leave early, to arrive late, or to stay home.  SUMF ¶ 196.  During the five months prior to Mr. Vigna's decision to discharge Plaintiff, the documents reflect that she was away from the office for 27 days and left early or arrived late 4 other times.  SUMF ¶ 169-188.  Of Plaintiff's 31 whole or partial days away from work between August 28, 2014, and January 27, 2015, Plaintiff alerted Mr. Vigna that *two* were arguably connected to Plaintiff's breathing disabilities.  SUMF ¶ 187-88.  Just two.  Of Plaintiff's 29 absences that were not related to her

disability: she took *eleven vacation days*; she was off work for *seven holidays*; she left early to take *her daughter to the doctor*; she spent three days in the hospital *for her daughter's surgery*; she came in late once after *an unidentified doctor's appointment*; she left early once for *an appointment with her OBGYN*"; she came to work late after *her father had tests* at the hospital; she missed one day due to *a fever*; and she missed three days after *her uncle and mother-in-law passed away*.  SUMF ¶ 169-86.  In comparison, her two absences that may have been disability-related: she missed one because of a "fever and *severe congestion*" and she missed another because she had "*some breathing issues*."  SUMF ¶ 187-88.

It is simply not reasonable to infer that two arguably disability-related absences contributed in any way to Mr. Vigna's decision to discharge Plaintiff.  If Plaintiff's absences reasonably could be considered a factor in her discharge, the only reasonable conclusion would be that it was Plaintiff's non-disability-related absences.  Even so, the undisputed facts show that Plaintiff was discharged for her poor performance.  Her disability discrimination claim therefore fails as a matter of law.

## CONCLUSION

For the foregoing reasons, WestRock is entitled to summary judgment on all of Plaintiff's claims.  Accordingly, WestRock respectfully requests that the Court for an order granting it summary judgment and dismissing Plaintiff's claims with prejudice.

Respectfully submitted,

HUSCH BLACKWELL LLP

By:  */s/ Andrew J. Weissler*
Randall S. Thompson
A.J. Weissler
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Telephone:  (314) 480-1500
Facsimile:  (314) 480-1505
randy.thompson@huschblackwell.com
aj.weissler@huschblackwell.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies the foregoing was served on the following via the Court's electronic service system, on this 5th day of May 2017:

Russell C. Riggan
Samuel W. Moore
Riggan Law Firm, LLC
132 W Washington Avenue, Suite 100
Kirkwood, Missouri 63122

*Attorneys for Plaintiff*

*Andrew J. Weissler*