UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION

| | | |
|---|---|---|
| VICKI TEETOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case: 4:15-cv-01002-HEA |
| | ) | |
| v. | ) | |
| | ) | |
| ROCK-TENN SERVICES INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff's opposition is a scattershot attempt to inject confusion and uncertainty into an otherwise simple narrative.  Plaintiff performed exempt administrative work for Defendant Rock-Tenn Services Inc. ("WestRock") by negotiating and managing the procurement of waste removal services for WestRock's customers.  Her work performance suffered in 2014; she failed to improve, and WestRock decided to discharge her in January 2015.  Shortly after the decision to discharge her but before it went into effect, Plaintiff requested FMLA leave. WestRock eventually effectuated the termination of Plaintiff's employment and her doctors determined that she was totally disabled.

None of Plaintiff's many arguments dispute these or any other material fact, none establish that WestRock violated Plaintiff's rights under the Family and Medical Leave Act ("FMLA"), the Missouri Human Rights Act ("MHRA"), the Americans with Disabilities Act ("ADA"), the Fair Labor Standards Act ("FLSA"), or the Missouri Minimum Wage Law ("MMWL"). Plaintiff's claims therefore fail as a matter of law.

# I.     Plaintiff is not entitled to any heightened standard for summary judgment.

Plaintiff repeatedly misstates WestRock's burden on summary judgment for her state law claims, relying on state court precedent to argue that summary judgment should be "seldom used in employment discrimination cases." Dkt. No. 63, at 3 [hereinafter, "Plaintiff Brief at __"]. Plaintiff's argument runs afoul of the *Erie* doctrine and directly contradicts controlling Eighth Circuit precedent. The summary judgment standard for Plaintiff's state law claims "is governed by the federal standard embodied in Fed. R. Civ. P. 56, rather than by state law." *PHI Fin. Servs., Inc. v. Grabanski*, 2011 WL 13164883, at *2 (D.N.D. Mar. 30, 2011); *see also* Wright & Miller, 10A Federal Practice & Procedure § 2712 (4th ed.) ("[Q]uestions relating to the availability of summary judgment, such as whether there is a disputed issue of fact that is sufficient to defeat the motion, are procedural and therefore governed by Rule 56, rather than by state law."). The Eighth Circuit has rejected Plaintiff's proffered "employment case exception" to summary judgment, which that court states is a useful "tool to determine whether any case, including one alleging discrimination, merits a trial." *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).

Plaintiff's efforts to lower the procedural bar are a tacit acknowledgment that her claims will not survive summary judgment under the proper federal standard. Despite Plaintiff's efforts to confuse, contradict, and contort the record, the undisputed facts confirm that each of her many claims fail as a matter of law, and WestRock is entitled to summary judgment.

# II.    Permitting Plaintiff to work from home is neither a reasonable nor an effective accommodation.

In order to salvage her disability discrimination claims, Plaintiff tries to make an end-run around her continuing inability to perform her job with or without a reasonable accommodation by claiming that—despite all of the evidence to the contrary—she could somehow perform the

essential functions of her job from home.  Plaintiff's attempt—along with her disability discrimination claims—fails for either of two reasons:  First, it is undisputed that in-person attendance is an essential function of Plaintiff's job and this Court should not supplant WestRock's business decision to prohibit its Market Analysts from working remotely.  Second, Plaintiff's medical documents and deposition testimony confirm that she is physically unable to perform her job even from home.

**A.** **This Court should decline Plaintiff's request to displace WestRock's business judgment that in-person attendance is an essential function for a Market Analyst.**

For all of the reasons discussed in WestRock's initial brief, in-person attendance is an essential function of Plaintiff's job and it would not be a reasonable accommodation to permit Plaintiff to work from home.  *See* Dkt. No. 56, at 17-19 [hereinafter, "WestRock Brief at ___"].[1]

Plaintiff does not dispute the material facts demonstrating why working from home is not feasible for her or any Market Analyst.  Instead, Plaintiff relies on two facts: (1) Plaintiff and others had been permitted to work from home previously; and (2) Mr. Vigna testified that the job duties of a Market Analyst could technically be performed from home.  Neither of these facts disputes that it was an essential function of the job to perform those job duties at WestRock's office.  In fact, WestRock's business decision to end its work-from-home program based on its impact on WestRock's operations (and to not permit any Market Analyst to work from home after 2009) is evidence that in-person attendance was an essential function of Plaintiff's job.  *See Medley v. Valentine Radford Commc'ns, Inc.*, 173 S.W.3d 315, 322 (Mo. Ct. App. 2005) (finding

---

[1] Plaintiff argues that it was WestRock's burden to prove that her requested accommodation caused an undue hardship.  Not true. It is not a reasonable accommodation to remove an essential function. *Hill v. Walker*, 737 F.3d 1209, 1217 (8th Cir. 2013) ("An employer need not . . . eliminate the essential functions of a job to accommodate a disabled employee." (quotations omitted)).  Because working from home was not a reasonable accommodation, the burden never shifted to WestRock to show it would create an undue hardship. *See Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004) (explaining the burden-shifting in an accommodation case).

in-person attendance an essential function where—as here—"working from home had been tried and had failed because of the special requirements of the position"); *see also Hanlon v. Mo. Dep't of Health & Human Servs.*, 2012 WL 52831644, at *4 (W.D. Mo. Feb. 17, 2012) ("An employer who offers a temporary accommodation does not thereby admit that offering the same as a permanent accommodation would be reasonable." (citing *Rehrs v. Iams Co.*, 486 F.3d 353, 358 (8th Cir. 2007)). To find that working from home is a reasonable accommodation, this Court would have to replace WestRock's business judgment—which runs afoul of the deference owed to employers in this arena. *See Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir. 1998) ("An employer's identification of a position's 'essential functions' is given some deference under the ADA."); *Kinnaman v. Ford Motor Co.*, 79 F. Supp. 2d 1096, 1103 (E.D. Mo. 2000) ("The Court defers to [the employer]'s identification of regular and predictable attendance as an 'essential function' of the [plaintiff's job."); *see also Medley*, 173 S.W.3d at 322 (rejecting a plaintiff's claims that just because the job duties could technically be done from home it was reasonable to work from there).[2]

**B.      There is no dispute that Plaintiff is unable to perform her job duties, even from home.**

Even if working from home were a reasonable accommodation—which it is not—it is undisputed that Plaintiff could not effectively do so.  Without citation to the record, Plaintiff argues that since March or April of 2015 she was "physically able" to work for Defendant if granted the accommodation of working from home.  Plaintiff Brief at 28-29.  This conclusory,

---

[2] The cases upon which Plaintiff relies are neither factually similar to this case nor controlling authority.  At best, those cases demonstrate that working from home could be a reasonable accommodation for some positions.  None demonstrate that it is a reasonable accommodation for Plaintiff to perform her job from home.

self-serving statement is not enough to overcome Plaintiff's own admissions and medical records
stating she is totally incapable of working with or without an accommodation.

The evidence that Plaintiff is not able to perform her job, even with an accommodation, is
overwhelming.  Plaintiff admitted during her deposition that her breathing and nerve issues
prevented her from performing her job, even from home:

Q.      Did you take the leave in 2015 because you couldn't walk?

A.      I took the leave because I was having dual issues. I had both going on.

Q.      What were the dual issues?

A.      The dual issues was [sic] my feet were black. I had no circulation. I could not feel
        my legs. My hips were completely numb. My fingers, I can't feel nothing, so they
        were completely numb. I was having trouble breathing. I was gasping.

*Q.      And those would have prevented you from even performing your job at home,
        correct?*

*A.      Yes.*

Plaintiff Dep. 281 (emphasis added).  All of Plaintiff's medical records (which Plaintiff agrees
are accurate) reflect physical limitations that confirm Plaintiff is unable to work in any capacity.
*See* WestRock Brief at 19.  Plaintiff admits she has no medical support for her contention that
she would have been able to perform any services for WestRock after April 2015.  Plaintiff Dep.
266.  In fact, her neurologist said working from home "wasn't a good idea," and another
physician told her, "*I don't see how you can [work from home] when you cannot feel your legs
or your feet or your hands.*"  Plaintiff Dep. 271, 278-79 (emphasis added).

To counter these facts, Plaintiff offers only her contradictory, self-serving, and subjective
belief that she might have been able to work from home, vague statements about conversations
with her doctors that contradict the specific discussions noted above, and Plaintiff's belief that
getting away from the work environment would assist her breathing.  *See* Defendant's Reply to

Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ¶¶ 249-251, filed contemporaneously with this brief [hereinafter, "Reply SUMF ¶ ___"].  "Plaintiff's contradictory, self-serving revision to h[er] prior testimony will not be considered." *Hamilton v. Grubbs*, 2017 WL 264511, at *3 (E.D. Mo. Jan. 20, 2017) (citing several Eighth Circuit opinions in support).[3]

Even if the Court were to credit Plaintiff's subjective and unsupported belief that working from home would positively impact her breathing problems, working from home would still not be an effective accommodation.  First, Plaintiff admitted in her deposition both that her job was "impossible" to perform without working overtime and that—even from home—she could not work more than eight hours per day.  Reply SUMF ¶¶ 105, 267, 269.  Second, Plaintiff offers no explanation for how working from home would alleviate the nerve issues that Plaintiff admits prevented her from doing her job.  *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (requiring a plaintiff to "proffer a sufficient explanation" for the "apparent contradiction" between claiming total disability and alleging a reasonable accommodation exists for the disability).[4]

In light of the essential functions of her position and Plaintiff's physical condition, no reasonable jury could find that working from home is a reasonable or effective accommodation

---

[3] Plaintiff's testimony regarding *when* she allegedly became able to work from home is similarly contradictory and self-serving.  Initially, Plaintiff testified that she could have worked beginning on "July 15."  Plaintiff Dep. 24.  When asked the year to which she was referring, Plaintiff said "I guess 2015."  *Id.* at 25.  Later, Plaintiff stated that she could have started working from home "between April and May, then shifted to simply"[a]fter April."  *Id.* at 266.  Finally, when asked by her attorney at the end of her deposition (and after numerous breaks), Plaintiff revised her timeline even earlier, claiming she could have started working "[b]etween March and April of 2015."  *Id.* at 293.  Plaintiff offers no explanation for these contradictory statements.

[4] Plaintiff spends much of her brief responding to straw man arguments regarding judicial estoppel.  WestRock argues not that Plaintiff is estopped from bringing her disability claims but that Plaintiff cannot meet her burden of proving an effective accommodation exists.

for Plaintiff.  Plaintiff therefore fails to meet her burden of proving that she could perform her

job with or without a reasonable accommodation, and her disability claims fail as a matter of

law.[5]

### III.  Plaintiff's FMLA entitlement claim fails because of her admitted inability to return to her position without an accommodation.[6]

For her FMLA entitlement claim, Plaintiff argues that WestRock violated the law when it

did not reinstate her to her position at the end of her leave entitlement in April 2015.  However,

"an employee is not entitled to restoration if, at the end of the FMLA leave period, the employee

is still unable to perform an essential function of the job."  *Hatchett v. Philander Smith Coll.*, 251

F.3d 670, 677 (8th Cir. 2001) (citing 29 C.F.R. § 825.21).  Plaintiff admits that she is not able to

perform her former job without a reasonable accommodation, and—unlike the ADA—"the

FMLA does not impose a duty of reasonable accommodation."  *Dollar v. Smithway Motor*

*Xpress, Inc.*, 710 F.3d 798, 806-07 (8th Cir. 2013); *Battle v. United Parcel Serv., Inc.*, 438 F.3d

856, 864-65 (8th Cir. 2006) ("[T]he FMLA omits any requirement that employers seek to

reasonably accommodate employees who cannot perform the essential functions of their

respective positions.").  Thus, it is undisputed that Plaintiff was not entitled to be reinstated to

her position, and WestRock is entitled to summary judgment on her FMLA entitlement claim.

*See Piburn v. Black Hawk-Grundy Mental Health Ctr., Inc.*, 2016 WL 1464570, at *19 (N.D.

---

[5] Plaintiff's lengthy discussion of WestRock's failure to engage in the interactive process is a red herring.  Where—as here—no effective or reasonable accommodation is available, "any discussion concerning the interactive process . . . is superfluous."  *Dropinski v. Douglas Cnty., Neb.*, 298 F.3d 704, 710 (8th Cir. 2002); *see also Peebles*, 354 F.3d at 769-70 ("Our cases do not . . . impose liability merely for failing to fulfill this procedural aspect of the duty to reasonably accommodate.").

[6] For some reason, Plaintiff continues to use outmoded nomenclature for her FMLA claims, ignoring the recent guidance from the Eighth Circuit.  *See Tomlin v. Washington Univ.*, No. 4:11CV1871 HEA, 2013 WL 5406484, at *14 (E.D. Mo. Sept. 25, 2013) (acknowledging the Eighth Circuit's updated FMLA analysis).  No matter the label ascribed to them, Plaintiff's FMLA claims fail as a matter of law.

Iowa Apr. 13, 2016) ("Because [plaintiff] is unable to perform the essential functions of his job prior to taking FMLA leave without accommodation, he is not entitled to reinstatement under the FMLA.").[7]

### IV. Plaintiff's alleged absences on January 26 and 27 were not protected conduct sufficient to support her prima facie case of FMLA discrimination.

In order to sustain her FMLA discrimination claim, the burden is on Plaintiff to show that she engaged in protected conduct that was causally related to her discharge. For obvious reasons, no causal connection exists between Plaintiff's January 29, 2015, request for FMLA leave and the decision to discharge her employment that occurred on January 27, 2015. Plaintiff therefore tries to shift the timeline earlier, claiming that her requests to leave early on January 26 and to be absent on January 27 constituted an exercise of rights under the FMLA. Plaintiff Brief at 9-12. Plaintiff is mistaken, and her FMLA discrimination claim still fails for either of two reasons: (1) there is no evidence linking Plaintiff's January 26 and 27 absences to a serious health condition and (2) even if the absences were caused by a serious health condition, WestRock had no notice that Plaintiff was exercising her rights under the FMLA before deciding to discharge her.[8]

---

[7] Plaintiff's FMLA entitlement claim also fails because her discharge was entirely unrelated to her FMLA leave. *See infra* Part V; *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050-51 (8th Cir. 2006). Plaintiff suggests throughout her brief that WestRock did something improper by failing to certify all of her absences under the FMLA. None of these non-FMLA-certified absences—even if they could have been covered by the FMLA—support a claim under the FMLA because Plaintiff was not prejudiced by WestRock's failure to certify them. *See Johnson v. Wheeling Mach. Prod.*, 779 F.3d 514, 521 (8th Cir. 2015) ("Johnson must show that U.S. Steel's alleged failure to provide him with this information prejudiced him. Technical violations of the FMLA are not actionable unless they harm the employee."). Plaintiff acknowledges that she was never denied any requested absence prior to her discharge and she does not otherwise explain how she was prejudiced by the alleged failures to certify.

[8] Plaintiff claims that WestRock conceded that she engaged in protected activity. That is true as it relates to her January 29, 2015, request for FMLA leave. That is not true as it relates to her newly-claimed "protected activity" on January 26 and 27. Notably, the first reference in this

First, Plaintiff offers no evidence that her January 26 or January 27 absences were based on a covered "serious health condition" under the FMLA.  Requesting leave is only protected under the FMLA if the leave is caused by a serious health condition.  *See, e.g.*, *Sosa v. Coastal Corp.*, 55 F. App'x 716 (5th Cir. 2002) (holding that, to satisfy the "protected activity" element of a prima facie case of FMLA retaliation, the plaintiff "must show that she suffered from a serious health condition that made her unable to perform the functions of her position"); *Morris v. Family Dollar Stores of Ohio, Inc.,* 320 F. App'x 330, 338 (6th Cir. 2009) (same); *Walker v. Elmore County Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004) (same).[9]

Plaintiff has provided no evidence linking her absences from work on January 26 or 27 to any serious medical condition.  Plaintiff's alleged oral communication on January 26 and her email on January 27 merely refer to "breathing issues," and are without reference to the FMLA or Plaintiff's expectation that she would be out for any period of time longer than one day. Reply SUMF ¶¶ 225, 228, 237.  The first notice she gave WestRock that her condition would require more than a one-day absence occurred on the evening of January 27 (after the decision to discharge Plaintiff had already occurred).  Reply SUMF ¶¶ 188-89.  In that email, Plaintiff described her condition as "bronchitis with a touch of pneumonia."  Reply SUMF ¶ 189.  The Eighth Circuit has previously noted that bronchitis is not the sort of "serious health condition" that is covered by FMLA.  *See Dalton v. ManorCare of W. Des Moines IA, LLC*, 782 F.3d 955, 961 (8th Cir. 2015) (describing "acute bronchitis" as a "'short-term condition[]' FMLA was not intended to cover").  When Plaintiff applied for FMLA leave on January 29, she acknowledged

_____

case to Plaintiff's claimed early departure on January 26 occurred in Plaintiff's affidavit submitted in opposition to WestRock's motion for summary judgment.  The January 26 departure was not alleged in Plaintiff's Complaint or Amended Complaint, not recorded in Plaintiff's planner (in which she regularly recorded her attendance), not mentioned in any email between Plaintiff and her supervisor, and not raised by Plaintiff during her deposition.

[9] The Eighth Circuit does not appear to have affirmatively addressed this issue.

to Mr. Vigna that things had "gotten worse" since their last communication.  Reply SUMF ¶ 190.

The only medical evidence regarding her inability to work due to a serious health condition

during this timeframe states that Plaintiff's incapacity began on February 1, 2015.  Reply SUMF

¶ 237.  Thus, Plaintiff offers no evidence of any kind linking her absences on January 26 or

January 27 to a serious health condition, and those absences cannot support her retaliation claim.

Second, even if Plaintiff's absences on January 26 or 27 were related to a serious health

condition, there is no evidence that WestRock knew she was exercising her rights under the

FMLA by taking absences on those days.  Where an employee has previously requested and used

FMLA leave, a request for an absence without reference to the FMLA (even if based on a

potentially serious health condition) is not tantamount to a request for FMLA leave.  *See Escriba*

*v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1244 (9th Cir. 2014) ("[T]here are circumstances

in which an employee might seek time off but intend not to exercise his or her rights under the

FMLA."); *Amstutz v. Liberty Ctr. Bd. of Educ.*, 127 F. Supp. 3d 846, 853 (N.D. Ohio 2015).

WestRock had no way of knowing that by leaving early on January 26 and missing work

on January 27, Plaintiff was exercising her rights under the FMLA.  Plaintiff had left early or

missed work many times before without requesting FMLA leave.  Plaintiff knew how to request

FMLA leave—she had done it successfully twice before January 26, 2015, and she did it again

on January 29, 2015.  Reply SUMF ¶¶ 106, 110, 113, 190, 237-238.  Plaintiff offers no evidence

to establish how WestRock should have known that the January 26 and 27 absences were

somehow different.  In order for the FMLA's protections to take hold, "[t]he employer must be

made aware that the absence is due to a serious illness so the employer can distinguish it from

ordinary 'sick-days,' or even malingering, as a type of unusual and privileged absence." *Rask v.*

*Fresenius Med. Care N. Am.*, 509 F.3d 466, 472 (8th Cir. 2007).  Without evidence that

WestRock had any notice that her requests for absences invoked the FMLA, there can be no causal connection between the decision to discharge and the protected activity.

The undisputed facts show that the first notice that anyone at WestRock received that Plaintiff intended to use FMLA leave did not occur until January 29, 2015—two days after the decision to discharge Plaintiff.  Plaintiff's efforts to shift that timeline earlier are ineffective and there is ultimately no causal connection between any request for leave and the decision to discharge Plaintiff.

**V.      Plaintiff's disability did not contribute to WestRock's decision to discharge Plaintiff for poor performance, nor was that discharge a pretext for FMLA discrimination.**

Plaintiff advances a number of arguments to claim that her disability contributed to her discharge or that her discharge was a pretext for FMLA discrimination.  The undisputed facts, however, show that Plaintiff's discharge was based on her performance, and neither her disability nor her conduct allegedly protected by the FMLA contributed to it in anyway.  *See also* WestRock Brief at 20-22.

**A.      Plaintiff does not dispute the performance issues that motivated her discharge.**

Importantly, Plaintiff's brief is bereft of any dispute over the performance deficiencies that prompted Mr. Vigna to discharge her.  Plaintiff does not challenge the performance deficiencies that motivated her poor performance review and improvement plan or the continuing problems that led to her discharge.  At most, Plaintiff offers in her statement of facts some mild disagreement with the ultimate decision and her belief that further investigation would have exonerated her for some of the claimed mistakes, but that does not demonstrate pretext where there is no dispute that her supervisor honestly believed her performance was deficient.  *See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1003 (8th Cir. 2012) ("Even if the business decision was ill-considered or unreasonable, provided that the decisionmaker honestly

believed the nondiscriminatory reason he gave for the action, pretext does not exist." (quotation marks and alterations omitted)).

## B.  Plaintiff had previously taken FMLA and or medical-related leave without repercussion.

Plaintiff's two previous FMLA leaves and her claim that she had taken other absences related to her alleged serious health condition without consequence are further evidence that WestRock was not hostile to her claimed protected activity or her disability.  *See Chappell v. Bilco Co.*, 675 F.3d 1110, 1118 (8th Cir. 2012); *Malloy v. U.S. Postal Serv.*, 756 F.3d 1088, 1091 (8th Cir. 2014) ("Malloy also used FMLA leave on several other occasions between April and November without repercussions, suggesting that the employer was not hostile to the protected activity.").

## C.  Mr. Vigna's concerns over Plaintiff's performance pre-dated her claimed protected activity.

It is undisputed that Mr. Vigna had concerns over Plaintiff's performance long before her claimed protected activity.  As early as March 2014, Mr. Vigna expressed a desire to discharge Plaintiff based on her poor performance.  Reply SUMF ¶¶ 198, 202.  He then gave Plaintiff a poor performance review in November 2014.  Reply SUMF ¶ 204.  These documented performance concerns undercut any inference of discrimination based on Plaintiff's disability or medical-related absences.  *See Malloy*, 756 F.3d at 1091.

## D.  The timing of Plaintiff's discharge is not evidence of pretext.

Plaintiff relies on the close timing between her absences on January 26 and 27 and the decision to discharge her, but there is nothing suspicious about the timing of the discharge decision in this case.[10]

---

[10] Plaintiff also seeks to create an inference of discrimination based on the timing of when the termination was communicated to Plaintiff.  Plaintiff Brief at 13-14. That date is irrelevant,

First, there is undisputed evidence that Mr. Vigna's decision to discharge Plaintiff was prompted by performance deficiencies that occurred at around the same time as Plaintiff's alleged protected activity. Reply SUMF ¶ 207; s*ee Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1001 (8th Cir. 2011) ("A plaintiff's prima facie retaliation case, built on temporal proximity, is undermined where the allegedly retaliatory motive coincides temporally with the non-retaliatory motive."). Second, Plaintiff regularly missed work without suffering discipline or discharge. Plaintiff offers no explanation for why the January 26 and 27 absences were somehow different than all those before it. Reply SUMF ¶ 112. In fact, given Plaintiff's irregular attendance, it would have been impossible for Mr. Vigna to make a decision to discharge her at a time that was not temporally proximate to an absence. In other words, if the timing of the discharge decision is evidence of pretext simply because of its closeness to an absence then Plaintiff or individuals with similar attendance records could insulate themselves from ever being subject to discharge by simply missing enough work and leaving no windows of time for employers to make a non-suspect decision.

Under these circumstances, the timing of Plaintiff's discharge is not evidence of pretext.[11]

---

because it is undisputed that WestRock had already decided to discharge Plaintiff on January 27 and the later date was merely the culmination of that decision. If anything, the timing of the discharge demonstrates that Plaintiff's request for leave *prolonged* her employment and did not hasten her discharge.

[11] Both cases that Plaintiff cites in support of her timing argument addressed temporal proximity at the *prima facie case* stage and each of those cases ultimately determined that the timing was *not sufficient* to show pretext and affirmed summary judgment in the employer's favor. *See Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002) ("[T]emporal proximity sufficed to create a prima facie case of disability discrimination, but not to show that the defendant's proffered reason was pretextual."); *Wierman*, 638 F.3d at 1001 ("Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." (quotations omitted)).

**E.      There is no evidence that Mr. Vigna harbored any FMLA- or disability-related animus.**

Despite the fact that he never denied her any absence she requested, Plaintiff claims that Mr. Vigna harbored some form of animus toward her medical-related absences based on: (1) Plaintiff's speculative belief that Mr. Vigna was upset and mistreating her based on her medical-related absences, (2) Mr. Vigna's alleged frustration over her medical-related absences, (3) several discussions with Mr. Vigna counseling Plaintiff about her absences, and (4) emails in which Mr. Vigna and others discussed Plaintiff's discharge and request for FMLA leave. Plaintiff Brief at 14-16.  None of this "evidence" shows that Mr. Vigna harbored any animus toward Plaintiff.

First, Plaintiff's speculative belief that Mr. Vigna was upset or mistreated her because of her medical-related absences is not probative of pretext.  Reply SUMF ¶ 287.  Second, while it is true that Mr. Vigna counseled Plaintiff on her absences, he never said anything to discourage Plaintiff from missing work for medical related reasons.  To the contrary, Mr. Vigna told Plaintiff that he understood "when you're sick, you're sick" and simply encouraged Plaintiff to be at work more often.  Reply SUMF ¶ P150.  Plaintiff does not dispute that she had many absences in 2014, most of which were not tied to her claimed serious health condition.  Reply SUMF ¶ 130.  Given those absences, Mr. Vigna's innocuous, non-threatening counseling does not demonstrate animus over Plaintiff's disability or medical-related absences.  Notably, Plaintiff was never discouraged from taking absences by these conversations and Mr. Vigna never denied her any requested absence, whether medical or otherwise.  Reply SUMF ¶ 196.[12]

---

[12] For example, Plaintiff claims that Mr. Vigna approached her about absences in August 2014. Reply SUMF ¶ 193.  Almost immediately following this conversation, Plaintiff requested—and Mr. Vigna permitted—numerous additional absences for a variety of reasons.  SUMF ¶ 165-181.

Third, there is no evidence that Mr. Vigna ever expressed frustration over Plaintiff's medical-related absences.  Plaintiff contorts testimony by Mr. MacDonald in which he explained that Mr. Vigna was frustrated with Plaintiff's absences, but Mr. MacDonald acknowledged that he did not know the reasons for Plaintiff's absences and therefore does not know whether Mr. Vigna's frustration was tied to medical-related absences or others.  *See* Reply SUMF ¶ P112.

Finally, Plaintiff tries to show discriminatory animus by relying on post-termination-decision emails in which Mr. Vigna and others discussed Plaintiff's FMLA request and its impact on the timing of her discharge.  While the comments may reflect poorly on the professionalism of the individuals involved, they are not evidence of animus based on Plaintiff's FMLA request or disability.  Instead, they demonstrate genuine surprise that Plaintiff requested FMLA leave shortly after Mr. Vigna had decided to discharge her, frustration that Plaintiff's leave may delay effectuating the discharge, and continued frustration with Plaintiff's poor grammar in her written communications.  *See* Reply SUMF ¶¶ P90-P99, ¶127.  Plaintiff tries to contort these emails into evidence that the individuals sending them must not have been making "lawful decisions," but such a leap is not appropriate without evidence linking the hostility to Plaintiff's protected conduct or characteristics.  *See, e.g.*, *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1196 (11th Cir. 2016) (rejecting an inference that hostility by management is evidence of discrimination where "there is no evidence that their alleged hostility was in any way motivated by a discriminatory animus regarding the plaintiffs' [protected characteristics]").[13]

---

[13] Plaintiff admitted that she and Mr. Vigna never got along and that their personalities conflicted long before she became disabled or took medical-related absences.  *See* Reply SUMF ¶ 285.

Simply put, there is no evidence that Mr. Vigna held any animus toward Plaintiff's disability or medical-related absences to support Plaintiff's claim that her discharge was pretext for FMLA or disability discrimination.

**F.   WestRock neither failed to follow its internal procedures nor treated any similarly situated employee more favorably than Plaintiff.**

Plaintiff claims that WestRock's failure to follow its own procedures and its treatment of other employees are evidence of disability- or FMLA-based discrimination.  Neither is.

First, it is undisputed that WestRock followed its company policy that required all employees who receive an inconsistent rating to receive a performance improvement plan and there is no evidence of any employee who received an inconsistent rating and was not placed on a performance improvement plan.  Reply SUMF ¶ 213-214.  Plaintiff claims that WestRock's decision to terminate her employment before the expiration of the 90-day PIP period is evidence of pretext, but nothing in WestRock policy or the PIP promised Plaintiff's employment was safe during the period of the PIP.  Reply SUMF ¶¶ 217, 278.  After Plaintiff continued to make significant mistakes during the PIP, Plaintiff's supervisor determined to discharge her—rather than wait for improvement.  Reply SUMF ¶¶ 218, 223, 225.  "Under such circumstances, the dismissal of an employee before the end of a probationary period serves as no indication of pretext."  *Reynolds v. Extendicare Health Servs., Inc.*, 2006 WL 3168815, at *5 (S.D. Ohio Nov. 1, 2006).

Plaintiff claims that WestRock was required to follow its progressive discipline policy for her performance problems but there is no evidence of *any* employee receiving each of the progressive discipline steps laid out in the allegedly mandatory progressive discipline policy. The policy includes four pre-discharge steps of discipline.  Reply SUMF ¶¶ 278-279, P165. None of the employees discussed in Plaintiff's brief received all four pre-discharge steps of

discipline—Charles Dunehew received two written warnings before being discharged, Jennifer Jernstad went straight on a performance improvement plan before being demoted, Elizabeth Simmons received one written warning, and Trish Tuhro received one written warning before being discharged.  Reply SUMF ¶¶ P176-177, 274, 276, P207, P210-P211.[14]

Ultimately, WestRock's treatment of these other employees is irrelevant because she has failed to show that any of them are similarly situated to her.  At the pretext stage, Plaintiff bears the burden of demonstrating that the comparator employees are similarly situated to Plaintiff in all relevant respects.  *Torgerson*, 643 F.3d at 1051 ("While instances of disparate treatment can support a claim of pretext, plaintiffs have the burden to prove that they and the top applicants were 'similarly situated in all relevant respects'—a 'rigorous' standard at the pretext stage.").  Plaintiff fails to even try to meet her rigorous burden, providing only vague descriptions of the disciplinary history of several employees without any information regarding the type or severity of the performance issues involved. Plaintiff Brief at 18.  Without more, no reasonable jury could find that Plaintiff was similarly situated to those employees.  *Bone v. G4S Youth Servs.*, 686 F.3d 948, 956 (8th Cir. 2012) (noting that comparators "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances").[15]

Ultimately, there is no evidence that Plaintiff's discharge for performance-related reasons was a pretext for FMLA discrimination or that her disability contributed to her discharge in any

---

[14] Notably, Ms. Jernsted also requested FMLA leave during her employment, so any favorable treatment of Ms. Jernsted actually undermines Plaintiff's FMLA discrimination claim.  Plaintiff Dep. 258.

[15] Notably, Plaintiff admits that no one with the same or worse performance problems as hers were permitted to keep their jobs with WestRock.   Reply SUMF ¶ 288.

way.  Because her discharge was unrelated to her FMLA claim or her disability, her disability

discrimination claims and her FMLA discrimination claim fail as a matter of law.

## VI.      Plaintiff was a properly exempt administrative employee.

In arguing against her exempt status, Plaintiff does not effectively dispute any of the facts

relied upon in WestRock's opening brief.  Instead, she offers ill-fitting authority to suggest that

she was performing productive—rather than administrative—work, and a self-serving affidavit

that is not competent to dispute the many ways in which she used discretion and independent

judgment with respect to matters of significance.

### A.      Plaintiff's administrative work for Westrock's customers satisfies the administrative exemption's second prong because her work related to the general business operations of WestRock's customers.

It is undisputed that Plaintiff's primary duty was the non-manual work of negotiating and

procuring waste and recycling services for WestRock's customers, which relates to the general

business of those customers.  *See* Reply SUMF ¶¶ 34-89.

Plaintiff does not effectively challenge that the work she performed was administrative,

claiming instead that she was not exempt because the work she performed on behalf of

WestRock's customers was the same service that WestRock sold to those customers.  Plaintiff's

argument misunderstands the exemption's requirements.

Simply put, if a company's purpose is to provide administrative services for its

customers—like WestRock's waste services division—then the employees providing those

services are performing exempt administrative work.  *See* 29 C.F.R. § 541.201(c); 69 Fed. Reg.

22122, 22142 (Apr. 23, 2004) (noting that an employee who performs administrative tasks for an

employer's customers is not excluded from the exemption just because the employee works for a

"a concern engaged in furnishing such services for a fee" (internal quotation marks omitted)); *see*

*also Beauford v. ActionLink, LLC*, 2013 WL 1247644, at *7 (E.D. Ark. Mar. 27, 2013)

(assuming without deciding that brand advocates who "directly generate[d]" their employer's product by promoting its customer's sales were nevertheless engaged in administrative work for the customer).  As the Department of Labor notes, the administrative exemption's inclusion of administrative work related to the operations of the employer's customers "is meant to place work done for a client or customer on the same footing as work done for the employer directly." 69 Fed. Reg. at 22142.  If Plaintiff's job was to negotiate and procure waste removal services for a restaurant chain while employed by that chain, there could be no dispute that her work was administrative rather than productive.  *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1056 (8th Cir. 2015) ("[I]f an employee is simply performing work that is ancillary to an employer's principal production activity, the employee is administrative." (quotations omitted)).  Because Plaintiff did those same services on behalf of WestRock for its customers, she was performing exempt administrative work.[16]

**B.   Plaintiff's work satisfies the administrative exemption's third prong because she regularly exercised discretion and independent judgment with respect to matters of significance.**

As described in WestRock's opening brief, Plaintiff regularly exercised independent judgment and discretion with regard to matters of significance.  WestRock Brief at 7-11.  In opposition, Plaintiff ignores the facts argued in WestRock's brief (based on numerous admissions in her deposition testimony, including statements in her job description and resume that she agreed were accurate and plainly paint the picture of an exempt employee).  Instead,

---

[16] Plaintiff relies heavily on two district court cases from Kansas and Texas, but those cases are distinguishable.  Each focused on whether the employees' work was related to the general business operations of the employers, not—as here—the employer's customers' operations. *Owens v. CEVA Logistics/TNT*, 2012 WL 6691115, at *9 (S.D. Tex. Dec. 21, 2012); *Koehler v. Freightquote.com, Inc.*, 2015 WL 4203962, at *23 (D. Kan. July 10, 2015).  Also, Koehler— unlike Plaintiff—had no contact with Freightquote's customers, negating any inference that she was providing administrative services to those customers.  *Koehler*, 2015 WL 4203962, at *24.

Plaintiff submits and relies on an affidavit that contradicts her deposition testimony and parrots the regulatory language in conclusory terms.  This is not competent summary judgment evidence, and Plaintiff has not identified a disputed fact regarding the third prong of the administrative exemption.  *See Conolly v. Clark*, 457 F .3d 872, 876 (8th Cir. 2006) ("[A] properly supported motion for summary judgment is not defeated by self-serving affidavits."); *LaCroix v. Sears, Roebuck & Co.*, 240 F.3d 688, 691 (8th Cir. 2001) ("An affidavit also must be based on facts, not conclusory statements.").

Because Plaintiff's work satisfies all three prongs, she was properly exempt and her overtime claims fail as a matter of law.

<u>**CONCLUSION**</u>

For the foregoing reasons, WestRock is entitled to summary judgment on all of Plaintiff's claims.  Accordingly, WestRock respectfully requests an order granting it summary judgment and dismissing Plaintiff's claims with prejudice.

Respectfully submitted,

HUSCH BLACKWELL LLP

By:  */s/ Andrew J. Weissler*
     Randall S. Thompson
     A.J. Weissler
     190 Carondelet Plaza, Suite 600
     St. Louis, Missouri 63105
     Telephone:  (314) 480-1500
     Facsimile:  (314) 480-1505
     randy.thompson@huschblackwell.com
     aj.weissler@huschblackwell.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies the foregoing was served on the following via the Court's electronic service system, on this 7th day of July 2017:

Russell C. Riggan
Samuel W. Moore
Riggan Law Firm, LLC
132 W Washington Avenue, Suite 100
Kirkwood, Missouri 63122


*Attorneys for Plaintiff*

*Andrew J. Weissler*